UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSEPH DALE LEWIS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:16-cv-03316-TWP-DLP ) |
| RICHARD STIRES, of the Elwood Police Department, LUCAS TRAYLOR, of the Elwood Police Department, NATHAN HIATT, Madison County Sheriff Deputy, SCOTT MELLINGER, Madison County Sheriff, and PHILLIP CALDWELL, (former) Police Chief, | ) ) ) ) ) ) |
| Defendants. | ) |

## ENTRY ON PENDING MOTIONS

This matter is before the Court on numerous pending motions: Defendants Richard Stires ("Officer Stires"), Lucas Traylor ("Officer Traylor"), and Phillip Caldwell ("Chief Caldwell") (collectively, the "Elwood Defendants") have filed a Motion for Summary Judgment (Filing No. 108), and Defendants Nathan Hiatt ("Deputy Hiatt") and Scott Mellinger ("Sheriff Mellinger") (collectively, the "Madison County Defendants") have filed a Motion to Enforce Settlement Agreement (Filing No. 115). *Pro se* Plaintiff Joseph Dale Lewis ("Lewis") has filed a Motion to Dismiss (Filing No. 116), Motion for Court Assisted Subpoena of Arrest Audio (Filing No. 122), Motion for Federal Government Intervention (Filing No. 123), Motion to Strike Motion to Dismiss and to Deny (Filing No. 124), Information of Corruption to the Court (Filing No. 130), Motion to Vacate Verbal Settlement Agreement Due to Corruption (Filing No. 131), Motion to Compel Financial Records from Defendants (Filing No. 132), Motion to Compel Kyle Jones to Surrender Evidence (Filing No. 133), and Motion to Serve Handwritten Motions on Opposing Parties (Filing No. 134). For the reasons stated below, the Elwood Defendants' and Madison County

Defendants' respective motions are **granted**. Some of Lewis' motions are **granted**; however, the majority are **denied**.

## I. BACKGROUND

Because the Motion for Summary Judgment filed by the Elwood Defendants is dispositive of the substantive issues that remain in this matter, the background information is presented pursuant to the summary judgment standard. That being the case, the facts are reviewed in the light most favorable to Lewis, the non-moving party, and the Court draws all reasonable inferences in Lewis' favor. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009). Notably, Lewis did not respond to the Elwood Defendants' Motion for Summary Judgment or present any disputed facts. This is despite the Elwood Defendants filing notice that his failure to do so would result in the Elwood Defendants' facts being "accepted by the court as being true unless [he] submit[ted] [his] own affidavits or other admissible evidence disputing those facts." ([Filing No. 113 at 1](#).)

During the relevant time period, the Elwood Defendants were police officers for the City of Elwood, Indiana, and each of them graduated from the Indiana Law Enforcement Academy. Officer Stires was a police officer for the City of Elwood from July 2014 to September 2017, and Officer Traylor has been employed there since March 2013. Chief Caldwell was employed as a police officer with the City of Elwood since 1987 and was appointed Chief of Police in 2014 and held that position until January 2016. There was nothing at any time during Chief Caldwell's tenure as chief that led him to believe Officers Traylor or Stires would engage in any unlawful use of force. (Filing No. 109-5). Chief Caldwell was not present at the scene of the residential entry or at the hospital and had no personal involvement in any of the events that occurred involving Lewis.

2

On September 12, 2015, Officer Stires, Officer Traylor, and other officers employed by the Elwood Police Department and Madison County Sheriff's Department responded to a reported residential entry at 403 South Main Street, Elwood, Indiana. Dispatch reported that a person named Joe Lewis had entered the complainants' home without permission and was now outside refusing to leave. Upon arrival at the scene, Lewis was sitting on the complainant's front porch. As they began speaking with Lewis, Officer Stires turned on his department issued digital audio recorder, and the recorder remained on throughout the interaction with Lewis. ([Filing No. 109-1 at 1](#)). Lewis informed Officer Stires and Officer Traylor that he suffered from post-traumatic stress disorder. ([Filing No. 109-1 at 1, Filing No. 109-4 at 1](#)). He told the officers that he was having trouble with a lack of sleep, that he was seeing things and hearing voices that were not there, and that he had been hallucinating. *Id.* Officer Stires went inside the home to speak with the complainants who had made the call. The complainants reported that Lewis had entered their home uninvited and was claiming that someone was trying to kill him.

After consultation, the officers determined that Lewis would be arrested for Residential Entry and a decision was made to place him in handcuffs. ([Filing No. 109-1 at 2](#); [Filing No. 109-4 at 2](#)). Officer Traylor and Officer Stires went back outside and Lewis was placed in handcuffs without incident while sitting on the front porch. *Id*. Officer Stires then went back inside the home to gather additional information from the complainants. Firemen who had been called to the scene were checking Lewis' condition. Approximately a minute after Lewis was placed in handcuffs he became combative. *Id*. Officer Traylor and the firemen assisted Lewis to the ground. Lewis was screaming and thrashing around violently at this time. *Id*. Officer Stires placed his right knee on Lewis' head to prevent him from hitting it on the sidewalk next to him. *I*d. Officer Traylor was

attempting to restrain Lewis' legs. Officer Traylor, Officer Stires, and two firemen tried to subdue Lewis to keep him from hurting himself or anyone else. Lewis was kicking as they were attempting to restrain him, and he kicked Officer Traylor numerous times in the chest. *Id*. at 3. Officer Traylor contacted dispatch to have a Sheriff's Deputy come to the location with leg restraints. *Id*. Throughout this encounter, officers attempted to calm Lewis down and can be heard on the audio recording stating "calm down Joe," "we are not going to hurt you," "we want to help you." ([Filing No. 114](#)).

Deputy Hiatt arrived and leg restraints were placed on Lewis' legs. Officer Traylor and the firemen were able to force Lewis to the ground as he was fighting wildly. Lewis asserts that while fully restrained in handcuffs, Officers Traylor and Stires were on top of him and repeatedly tased him. However, because his face was pushed into the ground, Lewis did not actually observe any officer deploying a Taser. ([Filing No. 109-15](#)). Lewis sustained physical injuries during the incident. *Id*.

Lewis was placed into an ambulance for transport to St. Vincent Mercy Hospital to be seen by medical staff for his mental state and any injuries that may have been sustained during the arrest. ([Filing No. 109-10](#)). Officer Stires audio equipment recorded comments made by Lewis. While in the ambulance, Lewis made comments such as wanting to die from his overdose, that he is a drug addict and he had overused his own prescriptions. ([Filing No. 114](#)). At the hospital, Lewis continued to kick and scream while medical staff attempted to treat him. Dr. Jennifer Bunch ("Dr. Bunch") ordered a catheterization and a blood draw from Lewis. ([Filing No. 110](#)). When the doctor attempted the catheterization, Lewis was struggling and kicking, and Officer Stires held one of Lewis' legs at the knee in an effort to prevent Lewis from hurting himself and hospital staff.

4

Neither Officer Traylor nor Officer Stires requested, ordered, performed, or otherwise demanded a catheterization or blood draw of Lewis; rather, the catheterization and blood draw were performed by, and at the direction of, medical staff at the hospital. ([Filing No. 109-1 at 1](); [Filing No. 109-4 at 1]()). These procedures were not performed for the purpose of any criminal investigation or to collect evidence. *Id.* The test results from the blood draw were positive for opiates, methamphetamine, amphetamine, cannabinoids, and hydrocodone. ([Filing No. 110 at 16]()).

On September 13, 2015, Lewis was transported from the hospital to jail. While in the jail, he noticed marks on his finger, which looked like burn marks. Following his release from jail, Lewis surfed the internet for information about Tasers. ([Filing No. 109-15 at 6-7]().) Lewis was charged with Residential Entry, to which he later pled guilty.

On December 8, 2016, Lewis initiated this action, and all defendants filed motions to dismiss. On August 17, 2017, the Court issued a ruling on the motions to dismiss filed by the Madison County Defendants ([Filing No. 12]()) and the Elwood Defendants ([Filing No. 15]()). The claims surviving the motions to dismiss with respect to the Elwood Defendants were that Officer Stires, Officer Traylor, and Deputy Hiatt violated the Fourth Amendment when using their electronic control weapons against Lewis, and Chief Caldwell negligently hired and carelessly retained Officer Stires and Officer Traylor. The claims surviving dismissal regarding the Madison County Defendants were that Sheriff Mellinger was negligent in hiring and careless in retaining Deputy Hiatt.

On September 20, 2017, Lewis filed an Amended Complaint, which is the operative complaint. In his Amended Complaint, Lewis added a claim that his Fourth Amendment rights were violated when he was catheterized at the hospital and a blood draw was taken from him.

([Filing No. 78](#).) He contends that as a result of the officers' actions on September 12, 2015, he suffered injuries, including but not limited to, fractures of various bones, dizzy spells, memory problems, and hip and leg problems. *Id.*

On February 6, 2018, Lewis, in person and by counsel, and the defendants, by their authorized representatives and by counsel, appeared for a settlement conference with the Magistrate Judge. The conference was held and concluded with an agreement between Lewis and Madison County Defendants on settlement terms and without settlement as to the Elwood Defendants. The Magistrate Judge issued the following order:

> Within thirty days of the date of this entry, counsel for the plaintiff shall file a motion to dismiss this cause against the Madison County defendants and submit an order for the Court's signature ordering the dismissal of this action or a stipulation of dismissal (consistent with the agreement of the parties).

([Filing No. 89](#)). The claims pending against the Elwood Defendants are as follows: Count I against Officer Stires and Officer Traylor, alleging that they violated the Fourth Amendment when using their electronic control weapons against Lewis and by forcing Lewis to be catheterized and to have his blood drawn; and Count II against Chief Caldwell, alleging that he negligently hired, retained, and supervised Officer Stires and Officer Traylor. All of Lewis' claims are asserted against the defendants in their individual capacities.

## II. **LEGAL STANDARD**

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In

ruling on a motion for summary judgment, the court reviews the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Anderson*, 477 U.S. at 255; *Zerante*, 555 F.3d at 584.

The party seeking summary judgment bears the initial responsibility of informing the court of the basis for its motion, and identifying "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (noting that, when the non-movant has the burden of proof on a substantive issue, specific forms of evidence are not required to negate a non-movant's claims in the movant's summary judgment motion, and that a court may, instead, grant such a motion, "so long as whatever is before the district court demonstrates that the standard . . . is satisfied."). *See also* Fed. R. Civ. P. 56(c)(1)(A) (noting additional forms of evidence used in support or defense of a summary judgment motion, including: "depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials"). Thereafter, a non-moving party, who bears the burden of proof on a substantive issue, may not rest on its pleadings but must affirmatively demonstrate by specific factual allegations that there is a genuine issue of material fact that requires trial. *Hemsworth*, 476 F.3d at 490; *Celotex Corp.*, 477 U.S. at 323–24; Fed. R. Civ. P. 56(c)(1).

Local Rule 56-1(f) provides that the court will assume that "the facts as claimed and supported by admissible evidence by the movant are admitted without controversy except to the extent that:" 1) the non-movant specifically controverts the facts with admissible evidence; 2) the movant's facts are not supported by admissible evidence; or 3) the facts, alone or in conjunction

with other admissible evidence, allow the court to draw reasonable inferences in the non-movant's favor sufficient to preclude summary judgment.

## III. DISCUSSION

The Elwood Defendants request summary judgment on each of Lewis' constitutional claims—excessive force, careless hiring, retention, and supervision, and wanton conduct—on the basis that qualified immunity protects the officers. The Madison County Defendants ask that the Court enforce the Settlement Agreement entered between them and Lewis. Lewis has nine (9) motions pending, including several that deal with discovery. The Court will first address the defendants' motions before turning to the motions filed by Lewis.

### A. **The Elwood Defendants' Motion for Summary Judgment**

The Court finds that the Elwood Defendants are entitled to summary judgment on the Amended Complaint. Lewis' claims in his Amended Complaint are brought pursuant to 42 U.S.C. § 1983. Section 1983 confers no substantive federal rights; rather, it is a means for vindicating the deprivation of federal rights created elsewhere. *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (citing *Baker v. McCollan*, 443 U.S. 137, 144, n. 3 (1979)). Thus, the first step in any Section 1983 claim is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Connor*, 490 U.S. 386, 394 (1989); *Kernats v. O'Sullivan*, 35 F.3d 1171, 1175 (7th Cir. 1994). In this case, Lewis alleges that his rights under the Fourth Amendment were violated by means of the use of electronic control devices (Tasers) by Officer Traylor and Officer Stires, and his rights under the Fourth Amendment were violated when he was catheterized and a blood draw was taken from him. Both of those claims fail.

### 1. Lewis' claim in Count I regarding the alleged tasing event fails

Claims that law enforcement officers used excessive force in the course of an arrest or other "seizure" are analyzed under the Fourth Amendment and its "reasonableness standard." *Graham*, 490 U.S. at 395. The "reasonableness" of the use of force is judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight. *Id.* at 396. In determining whether the force used to effect a seizure is reasonable, courts must carefully balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Id*.

Lewis asserts that he was subjected to excessive force by means of the use of electronic control devices (Tasers) by Officer Traylor and Officer Stires. Case law has clearly established a constitutional right that officers cannot use excessive force in effectuating an arrest. *See, e.g.*, *Graham*, 490 U.S. 386; *Tenn. v. Garner*, 471 U.S. 1 (1985); *Abdullahi v. City of Madison*, 423 F.3d 763 (7th Cir. 2005); *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003). Lewis' claim fails because the designated evidence does not support that he was ever tased. As noted earlier, Officer Stires recorded the audio of what occurred at the scene of the arrest, during transportation to the hospital, and at the hospital. (Filing No. 109-1 at 1). He did not turn the recorder off until he was leaving the hospital. No conversations related to tasing are heard in the audio recording. (Filing No. 109-3). Officer Stires, Officer Traylor, Deputy Hiatt, the two firemen, and several witnesses on the scene have affirmed that neither officer pulled their Tasers out of their holsters during the incident and neither officer tased Lewis. (Filing No. 109-1 at ¶ 16; Filing No. 109-4 at ¶ 8; Filing No. 109-9 at ¶ 5; Filing No. 109-11 at ¶ 3; Filing No. 109-12 at 13; Filing No. 109-13 at 13; Filing

No. 109-14 at 4; [Filing No. 109-17 at 2-3](#)). In addition, the data from Officer Traylor's and Officer Stires' Tasers was subsequently downloaded and confirmed that neither officer triggered their Taser on the evening of September 12, 2015. ([Filing No. 109-7](#); [Filing No. 109-8](#)).

Lewis alleges in his Amended Complaint that the Elwood Defendants and Madison County Defendants used a specific method of tasing with electric control weapons while Lewis was restrained in handcuffs, often referred to as "dry stunning." ([Filing No. 78 at 3](#)). According to the Electronic Control Weapons 2011 Guidelines, "dry stunning" is an electronic control weapons method which is used to localize pain and is considered a pain compliance technique that should not be used when a suspect is restrained. *Id.* In support of his contention that he was tased, Lewis presents only circumstantial evidence that he may have been tased. He testified at his deposition that, during the arrest, he felt a burning across his hands and wrist. ([Filing No. 109-15 at 3](#)). While in the jail, he observed what appeared to be a Taser mark on his right pointer finger. *Id.* Upon release from jail, Lewis researched on the internet what a Taser burn looked like. *Id.* Based upon his internet research, he concluded that the burn mark was due to being tased. But Lewis concedes that he was face down during the incident, and he never observed any officer tase him. ([Filing No. 109-15 at 3-5](#).)

The Elwood Defendants argue that, during the incident, Lewis was likely hallucinating. During the arrest, Lewis can be heard screaming that he was on fire and his finger and wrist were burning. (Filing No. 114). Lewis also stated several times that he was seeing things and hearing voices that were not there. He had been running through the streets because he thought voices were chasing him. In part, because of his mental state, an ambulance was called to the scene so that he could be transported to the hospital. Lewis informed the officers and Dr. Bunch that he had been

10

abusing drugs and that he was a drug addict. Tests at the hospital were positive for opiates, methamphetamine, amphetamine, cannabinoids, and hydrocodone. In addition, during the ambulance ride and at the hospital, Lewis can be heard throughout the audio recording making nonsensical rantings. ([Filing No. 109-3, Filing No, 114](#).)

The Court agrees that there is no competent evidence that Lewis was tased at any time by any officer.   In a situation where an offender is resisting, an officer can use that amount of force necessary to overcome the offender's resistance.  *See Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592–93 (7th Cir. 1997); *Jones by Jones v. Webb*, 45 F.3d 178 (7th Cir. 1995).   Lewis was clearly resisting and suffering a great deal of emotional distress during the entire incident. However, the designated evidence shows that the officers did not deploy their Tasers any time on September 12, 2015. In this case, there is no causal connection between the officers' Tasers and Lewis' injuries to his wrist or finger.   The Court concludes there was no Fourth Amendment violation through use of electronic control devices (Tasers) as alleged by Lewis, and summary judgment on that claim is **granted**.

### 2. <u>Lewis' claim in Count I regarding the catheterization and blood draw fails</u>

Lewis' Fourth Amendment claim regarding the blood draw and catheterization against the Elwood Defendants fails as there was no constitutional violation of his rights caused by the officers.   The evidence is undisputed that the blood draw and catheterization were ordered by the attending physician, Dr. Bunch.   The results of the procedures were not obtained by, sought by, or used by the officers for investigatory or evidentiary purposes in the prosecution of any crime; rather, they were ordered by Dr. Bunch for medical screening purposes. Neither Officer Traylor nor Officer Stires had any input into Lewis' medical care at the hospital.

"As a general rule, in an emergency a doctor may render treatment without the patient's informed consent." *Pillow v. City of Appleton*, 2017 WL 2389625 at *3 (E.D. Wis. 2017). Courts have repeatedly held there is no Fourth Amendment violation when a plaintiff undergoes a forced catheterization ordered by a doctor for medical purposes and not for evidentiary purposes in the investigation of a crime. *See Sullivan v. Bornemann*, 384 F.3d 372 (7th Cir. 2004).

In addition, the fact that Officer Stires held one of Lewis' legs at the knee during the catheterization does not make it a Fourth Amendment violation. The designated evidence shows that Officer Stires held Lewis' leg because Lewis was resisting and struggling, and the officers did not want Lewis to hurt himself or the doctor. The officers' use of force to restrain Lewis at the hospital was "objectively reasonable" as a matter of law. *Brown v. Jachowicz*, 2017 WL 3835304 at *8 (E.D. Wis. 2017) (citing *Graham*, 490 U.S. at 397). Under the totality of circumstances, there was no constitutional violation, and summary judgment is warranted on this claim.

### 3. **The Elwood Defendants are entitled to qualified immunity**

Even if Lewis could establish a constitutional deprivation caused by Officer Traylor or Officer Stires, the Court finds the officers are entitled to qualified immunity against all of the constitutional claims asserted against them. "The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citation and quotation marks omitted). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Stanton v. Sims*, 134 S. Ct. 3, 5 (2013) (citations and quotation marks omitted).

In determining whether qualified immunity applies, courts decide "whether the facts that a plaintiff has alleged . . . make out a violation of a constitutional right," and "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 555 U.S. at 232. "Qualified immunity is applicable unless the official's conduct violated a clearly established constitutional right." *Id*.

Lewis' claims fail under both prongs of the qualified immunity test: the officers did not violate any of Lewis' constitutional rights because there is no designated evidence to support that he was tased or that the officers ordered the blood draw and catheterization. However, even if Lewis could demonstrate a constitutional violation, the defendants are still entitled to qualified immunity because any such right was not clearly established when viewed in the specific context of this case. The inquiry into whether the right was clearly established must be undertaken in light of the "specific context of the case," not as a broad general proposition. *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Accordingly, summary judgment is **granted** on the basis of the officers' qualified immunity.

### 4. Chief Caldwell is entitled to summary judgment on Count II

Count II of Lewis' Amended Complaint alleges that Chief Caldwell was negligent in hiring, retaining, and supervising Officer Traylor and Officer Stires. To be held liable for the violation of one's federally secured rights pursuant to 42 U.S.C. § 1983, an individual must have personally participated in the alleged constitutional deprivation. *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000); *Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003). The designated evidence shows that Chief Caldwell had no personal involvement in the events of September 12, 2015, at the scene of the residential entry or at the hospital. There is no evidence

13

that he caused or directly participated in any alleged constitutional violation. Although he was chief of police at the time of the incident, Chief Caldwell had no final hiring and firing authority. ([Filing No. 109-5 at 1](Filing No. 109-5 at 1)). The Board of Public Works and Safety makes all final decisions related to the hiring and termination of officers with the Elwood Police Department. *Id*. The Board of Public Works and Safety also has final authority on all disciplinary action. *Id*. There is no evidence that any constitutional violation occurred at his direction or with his knowledge and consent. Further, there is no evidence that Chief Caldwell was negligent in hiring, retaining, or supervising Officer Traylor and Officer Stires. Accordingly, summary judgment is **granted** on this claim.

### 5. The Elwood Defendants are entitled to summary judgment on Count IV

Count IV of Lewis' Amended Complaint is dismissed because it is duplicative of his claims in Counts I and II. For the same reasons that summary judgment is granted on those counts, summary judgment is **granted** on Count IV.

### 6. The Elwood Defendants are entitled to summary judgment on any state law claims

Lewis' Amended Complaint does not assert any claim under Indiana state law. He asserts only 42 U.S.C. § 1983 claims and pleads only original federal court jurisdiction pursuant to 28 U.S.C. § 1331. ([Filing No. 78](Filing No. 78), ¶6.) He does not assert supplemental jurisdiction under 28 U.S.C. § 1367. Accordingly, there are no state law claims pled. However, as the Elwood Defendants point out, even if state law claims had been asserted, those claims would have failed because (1) Lewis failed to serve a timely tort claim notice, and (2) the Elwood Defendants are otherwise entitled to immunity against any such claims under the Indiana Tort Claims Act.

## B. The Madison County Defendants' Motion to Enforce Settlement ([Filing No. 115](Filing No. 115)) and Lewis' Motion to Vacate Verbal Settlement Agreement ([Filing No. 131](Filing No. 131))

On February 6, 2018, the Magistrate Judge held a settlement conference. Lewis participated in person and with counsel, Christopher C. Myers ("Myers") ([Filing No. 89](#)). A settlement was reached between Lewis and the Madison County Defendants; in particular, the Madison County Defendants would pay $4,000.00 to Lewis, inclusive of all attorneys' fees and costs. ([Filing No. 115-1 at 3](#)). Lewis verbally agreed to dismiss Deputy Hiatt from this action and agreed that he would execute a standard release of claims (effective upon payment), releasing any and all claims against Deputy Hiatt and Sheriff Mellinger. *Id*. He also agreed to execute a stipulation of dismissal for the Madison County Defendants upon payment. The terms of the settlement were memorialized in a release of claims ("the Release") and forwarded to Myers for Lewis to sign. However, Lewis has refused to sign the Release and has informed the Madison County Defendants' counsel in a profanity-riddled email dated March 9, 2018, that he does not intend to honor the settlement agreement reached at the settlement conference. ([Filing No. 115-2 at 2](#).)

"A district court possesses the inherent or equitable power summarily to enforce an agreement to settle a case pending before it." *Davis v. Raytheon Technical Services Co., LLC*, 2012 WL 5499416 (S.D. Ind. 2012). "Under Indiana law, an agreement to settle a lawsuit is generally enforceable." *Johnson v. Masselli*, 2008 WL 73652, at *3 (N.D. Ind. 2008) (citing *Zimmerman v. McColley*, 826 N.E.2d 71 (Ind. Ct. App. 2005) (enforcing oral settlement agreement)). "Settlement agreements need not be written to be enforceable." *Id.* (citing *Vernon v. Acton*, 732 N.E.2d 805, 809 (Ind. 2000)).

On February 22, 2018, Myers filed notice of his intent to withdraw and noted that Lewis had terminated his services. ([Filing No. 92](#).) On April 20, 2018, Lewis, *pro se*, filed a Motion

15

to Vacate Verbal Settlement Agreement Due to Corruption ([Filing No. 131](#)). Lewis' motion presents extrinsic evidence and alleges that his attorney was "whispering poison into my ear to get me to settle" and "blackmailing me via money and obstruction of justice." *Id.* Lewis notes that this is the second attorney that he has had to fire. *Id.* Of importance, the Court notes that Myers is asserting a lien for unpaid legal fees and expenses against any settlement that Lewis may enter into with the Madison County Defendants, and Global Financial – a legal funding loan company – has asserted a lien against any payoff. ([Filing No. 100](#).) On March 26, 2018, the Madison County Defendants filed their Motion to Enforce the Settlement Agreement. ([Filing No. 115](#)). Just three days later (March 29), Lewis appears to comply with the Magistrate Judges' order (Filing No. 89) as he filed a Motion to Dismiss wherein he states, "I want to keep the settlement agreement with Madison County . . . ." ([Filing No. 116](#)). Lewis changes his mind again, and on April 12, 2018, filed a motion to withdraw his motion to dismiss. ([Filing No. 124](#)).

In determining whether the settlement agreement was a valid contract, and thus enforceable, the Court looks to Indiana contract law. The goal of contract interpretation is to ascertain and give effect to the parties' intent "as reasonably manifested by the language of the agreement." *Reuille v. E.E. Brandenberger Const., Inc.,* 888 N.E.2d 770, 771 (Ind. 2008). "Indiana follows 'the four corners rule' that extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." *Univ. of S. Indiana Found. v. Baker*, 843 N.E.2d 528, 532 (Ind. 2006). "Clear and unambiguous terms in the contract are deemed conclusive, and when they are present [the Court] will not construe the contract or look to extrinsic evidence, but will merely apply the contractual provisions." *Ryan v. Ryan*, 972 N.E.2d 359, 364 (Ind. 2012). A contract

16

is ambiguous if a reasonable person would find it subject to more than one interpretation. *Citimortgage, Inc. v. Barabas*, 975 N.E.2d 805, 813 (Ind. 2012).

Here, it is undisputed that a settlement agreement was reached, and there is no ambiguity in the parties' settlement agreement. The parties and their counsel appeared in person before the Magistrate Judge and stated on the record that a settlement had been reached with the Madison County Defendants only. ([Filing No. 78](#)). Lewis' Motion filed March 29, 2018, explained that he wished to "keep the settlement agreement." Even in his profane email communication, Lewis acknowledges the existence of a settlement agreement. ([Filing No. 115-2](#)). The Court finds that there was a valid offer and acceptance of adequate consideration when the settlement agreement was made. Lewis' personal disdain for the Madison County Defendants and their counsel and his fee disputes with his former attorney and the loan funding company do not present a valid reason to vacate the agreement. "Settlement agreements are governed by the same general principles of contract law as any other agreement, and thus [a]n offer, acceptance, plus consideration make up the basis for a contract." *Vernon*, 732 N.E.2d at 809. When the settlement agreement was made, there was clearly a meeting of the minds between Lewis and the Madison County Defendants. "A meeting of the minds of the contracting parties, having the same intent, is essential to the formation of a contract." *Id.* For these reasons, the Court **grants** the Motion to Enforce Settlement ([Filing No. 115](#)).

The Madison County Defendants also request that the Court address how the settlement proceeds should be distributed between Lewis and lienholders identified in the Notice of Lien ([Filing No. 100](#)). The Court directs the Madison County Defendants to file a Rule 67 motion to deposit the settlement funds with the Clerk of Court; thereafter, Lewis and the lienholders may

17

contact the Magistrate Judge if they believe a settlement conference would be helpful in determining how the proceeds should be divided.

C.      **Lewis' Motion to Dismiss ([Filing No. 116](Filing No. 116)) and Motion to Strike ([Filing No. 124](Filing No. 124))**

On March 29, 2018, Lewis filed a Motion to Dismiss ([Filing No. 116](Filing No. 116)). Lewis explained that he wanted to dismiss the case against all parties that have not agreed to settle, namely Officer Stires, Officer Traylor, and Chief Caldwell. *Id*. He further explained, "I want to keep the settlement agreement with Madison County, but all other parties I want dismissed and this cause closed." *Id*. Thereafter, on April 10, 2018, the Elwood Defendants filed a Notice to the Court that they had no objection to the dismissal, without prejudice ([Filing No. 121](Filing No. 121)). Once again, by April 12, 2018, Lewis had changed his mind and filed a Motion to Strike Motion to Dismiss and to Deny ([Filing No. 124](Filing No. 124)). In this motion, Lewis states that he wishes to proceed in the lawsuit because opposing counsel is dishonest, and the audio of his arrest has been edited.

Federal Rule of Civil Procedure 41(a)(2) provides ". . . an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." The Court has examined the merits of Lewis' claims against the Elwood Defendants and has determined that summary judgment is appropriate and no reasonable jury could find liability against the chief of police or that the officers' use of force was unreasonable or excessive under the totality of the circumstances. The Court has also determined that the verbal settlement agreement between Lewis and the Madison County Defendants is enforceable. Lewis' request to strike his motion to dismiss and to keep the "case alive" would be futile because, on the merits, the Court has determined that his claims against the Elwood Defendants fail as a matter of law. Accordingly, Lewis' Motion to Dismiss all Cases against all Parties and to Keep the Settlement Agreement ([Filing No. 116](Filing No. 116)) is

18

**granted**, and his Motion to Strike ([Filing No. 124](#)) is **denied**.

### D. Other Pending Motions

Lewis' Motion for Court Assisted Subpoena of Arrest Audio ([Filing No. 122](#)) is **denied** as moot. The Elwood Defendants [Filing No. 109 at 3](#) states that a copy of the audio disc (Exhibit 1-B) was manually served on all parties on March 9, 2018. In addition, the manual disc is a part of the designated record on file in this case and can also be reviewed at the Clerk's office. ([Filing No. 114](#)). Lewis' motions related to discovery are **denied** because the discovery deadline has expired. Regarding Lewis' remaining Motions, they are **denied as moot** because all issues in this case have been resolved.

### IV. CONCLUSION

For the reasons stated above, the Elwood Defendants' Motion for Summary Judgment ([Filing No. 108](#)) is **GRANTED**. The Madison County Defendants' Motion to Enforce Settlement Agreement ([Filing No. 115](#)) is **GRANTED** and the Court **ORDERS** dismissal of this action against the Madison County Defendants, consistent with the settlement agreement of the parties. Within **ten days** of this Entry, the Madison County Defendants shall file a Rule 67 Motion and deposit the settlement funds with the Clerk of Court. Thereafter, Lewis and the lienholders may contact the Magistrate Judge if they believe a settlement conference would be helpful in determining how the proceeds should be divided.

Lewis' Motion to Dismiss ([Filing No. 116](#)) is **GRANTED**. His Motion for Court Assisted Subpoena of Arrest Audio ([Filing No. 122](#)), Motion for Federal Government Intervention ([Filing No. 123](#)), Motion to Strike Motion to Dismiss and to Deny ([Filing No. 124](#)), Information of Corruption to the Court ([Filing No. 130](#)), Motion to Vacate Verbal Settlement Agreement Due to

Corruption ([Filing No. 131](#)), Motion to Compel Financial Records from Defendants ([Filing No. 132](#)), Motion to Compel Kyle Jones to Surrender Evidence ([Filing No. 133](#)), and Motion to Serve Handwritten Motions on Opposing Parties ([Filing No. 134](#)) are each **DENIED** on the merits or because the motion is moot.

  A final judgment as to all claims will issue under a separate entry.

  **SO ORDERED.**

Date: 5/9/2018

*Tanya Walton Pratt*

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Joseph Dale Lewis
2424 Fairfield Avenue
Fort Wayne, Indiana 46807

Kyle A. Jones
NORRIS CHOPLIN & SCHROEDER LLP
kjones@ncs-law.com

John Vincent Maurovich
COOTS, HENKE & WHEELER
jmaurovich@chwlaw.com

Matthew L. Hinkle
COOTS, HENKE & WHEELER
mhinkle@chwlaw.com